IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:23-cv-02950-DDD-KAS

TAVIS ROGERS,

    Plaintiff,

v.

NEWMONT CORPORATION,
including Newmont International Services Limited, an entity that is part of Newmont Corporation, a Delaware corporation,

    Defendant.

---

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

---

Plaintiff Tavis Rogers, who was employed by Newmont prior to this suit, was terminated for failing to comply with his employer's COVID vaccine mandate. He brings two claims of religious discrimination under federal law, which Defendant moves to dismiss on a number of grounds, including that Plaintiff's objections are more personal and medical than religious and that he failed to exhaust his administrative remedies with the EEOC. This motion to dismiss is denied with respect to Plaintiff's reasonable accommodation claim but granted as to his disparate treatment claim.

- 1 -

## BACKGROUND[1]

Travis Rogers was an employee of Defendant Newmont Corporation[2] when the COVID pandemic arose. Doc. 1 at ¶ 2. Mr. Rogers' designated work location was in Denver, Colorado, where Newmont's headquarters are located. *Id.* at ¶¶ 3, 18. In response to the pandemic, Newmont adopted a mandatory vaccination policy. *Id.* at ¶ 40. Under the mandate, all employees were required to be fully vaccinated by a stated deadline. *Id.* Newmont also provided a process for employees to request an exemption to the vaccine. *Id.* at ¶ 41. Based on his sincerely held religious beliefs, Mr. Rogers requested an exemption to the vaccine. *Id.* at ¶ 42. He submitted a questionnaire, answered follow-up questions, and participated in an interview, but Newmont ultimately denied his request for an exemption. *Id.* at ¶¶ 48, 83. Newmont subsequently terminated Rogers for failing to comply with the vaccine mandate. *Id.* at ¶ 95.

The questionnaire that Mr. Rogers submitted in support of his request for an exemption asked him to explain his reasons for denying the COVID vaccine. *Id.* at ¶ 51. He answered: "The nature of my objection is spiritual. My religious faith forbids me from obeying this mandate. The nature of my objection is being forced to choose between my conscience towards God or keeping my job." *Id.* at ¶ 52. The questionnaire also asked Mr. Rogers to identify his religion and why a request for an exemption was necessary. *Id.* at ¶ 53. He responded:

> "I am a Christian. Complying with this mandate would definitely burden my religious exercise because in my faith, my body

---

[1] The following facts from the operative complaint are presumed true for purposes of addressing Defendant's motion to dismiss.

[2] Defendant contends that Plaintiff was employed by Newmont International Services Limited, not Newmont Corporation. *See* Doc. 9 at 1 n.1. Because Plaintiff names both entities in his complaint, however, I refer to these entities interchangeably. *See* Doc. 1. at 1.

does not belong to me. I do not make the choices for my body; my Heavenly Father made those choices for me through His Word. He teaches us from Genesis through Revelations what we are allowed to put into our bodies and what we are not . . . ."

*Id.* at ¶ 54. Mr. Rogers's objection extends to all vaccinations. *Id.* at ¶ 56.

Mr. Rogers also submitted answers to Newmont's follow-up questions, along with a letter further explaining his religious beliefs. *Id.* at ¶ 62. In his letter, Mr. Rogers stated that he had prayed for guidance about how to proceed with the COVID-19 vaccine:

"The Lord Jesus Christ has been extremely clear and consistent in all of His responses to me that He has provided me with an immune system that He himself designed. He does not want my body, His Temple, to be injected with any medical substances that potentially modify His design. Further, the substances in these vaccines are possibly harmful to the body and the extent of that harm is unknown. We are called to protect the human body and not participate in any unnecessary medical intervention, especially one that is incurred under coercion or duress. As stated in 1 Corinthians 6:19 'Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?'"

*Id.* at ¶¶ 65-66. After Newmont denied his request for an exemption, Mr. Rogers submitted a response. *Id.* at ¶ 86. He reiterated that, under his religious beliefs, he is prohibited from taking the COVID-19 vaccine, he cannot alter God's design, and he cannot violate his conscience by submitting to the vaccine. *Id.* at ¶ 87.

Mr. Rogers brings two claims against Newmont. He first alleges that Newmont's failure to accommodate his religious beliefs amounts to religious discrimination in violation of Title VII of the Civil Rights Act of 1964. He also alleges that Newmont's actions amount to religious discrimination under Title VII based on a theory of disparate treatment. Newmont moves to dismiss both claims under Fed. R. Civ. P. 12(b)(6). Newmont also moves to dismiss Rogers' disparate treatment claim on

the grounds that Rogers failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission before bringing his claim.

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's role is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A court will "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ultimately, at this stage, the well-pleaded facts underlying a plaintiff's allegations must articulate a viable legal claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## ANALYSIS

**I. Mr. Rogers has stated a claim of religious discrimination based on Newmont's failure to accommodate his religious beliefs.**

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). The term "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j). An employer's failure to accommodate its employees' religious beliefs is justified "only when an employer . . . can demonstrate that an undue hardship would in fact result from each available alternative method of accommodation." 29 C.F.R. § 1605.2(c)(1).

To state a prima facie Title VII claim of religious discrimination based on failure to accommodate, a plaintiff must establish that "1) the employee has a bona fide religious belief that conflicts with a job requirement; 2) the employee informed the employer of this conflict; and 3) the employer fired the employee for failing to comply with the job requirement." *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018). Though the Tenth Circuit has recognized that a plaintiff need not plead a prima facie claim of discrimination to survive a motion to dismiss, *Johnston v. Hunter Douglas Window Fashions, Inc.*, 715 F. App'x 827, 830–31 (10th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)), it has held that "the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim" at the motion to dismiss stage. *Khalik*, 671 F.3d at 1192.

### A. Mr. Rogers pled facts showing his exemption request was based on bona fide religious objections.

Newmont's motion as to Mr. Rogers' reasonable accommodation claim centers around its contention that "he has not alleged bona fide *religious* objections" to the vaccine requirement. Doc. 9 at 10 (emphasis in original). Instead, Newmont argues that his objections were based on "medical and other non-religious concerns." *Id*.

Newmont is right that while religious beliefs are protected under Title VII, beliefs which are "essentially political, sociological, or philosophical views" are not. *See United States v. Seeger*, 380 U.S. 163, 165 (1965). And it is true that merely asserting "my body is my temple," or other quasi-religious language does not automatically qualify for an exemption under Title VII. *See, e.g, Passarella v. Aspirus, Inc.*, No. 22-cv-287-JDP, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023) (motion to dismiss granted as to relevant plaintiff's claim); *Fallon v. Mercy Catholic Med. Ctr. of S.E. Pa.* 877 F.3d 487, 490-91 (3rd Cir. 2017) (finding that an employee's beliefs about the vaccine's potential harm, and against harming his own body, were actually medical judgments rather than religious beliefs). But Newmont is wrong to suggest that is what the exemption request here does. Mr. Rogers repeatedly explains (as he did during the interactive exemption process with Newmont) that his religious faith compels him to reject the vaccine. Mr. Rogers alleges he objected to the vaccine for three principal reasons: (1) he did not want to alter God's design; (2) he believes his body is a temple for the Holy Spirt as written in the Bible; and (3) after prayerful consideration, he could not violate his conscience by submitting to the vaccine. Doc. 1 at ¶ 87.

Newmont leans on the fact that Mr. Rogers supplemented his religious objections with additional, non-religious objections. In the questionnaire he submitted to Newmont, for example, he referenced the

vaccine's potential harm to the body as well as the fact that he is "called to protect the human body and not participate in any unnecessary medical intervention . . . ." *Id.* at ¶¶ 65-66. These statements might suggest that Mr. Newmont wanted to avoid the COVID vaccine because of concerns about its efficacy and safety, as Newmont contends.

But the fact that Mr. Rogers might also have "other non-religious concerns" does not change the fact that the requirement would have forced Mr. Rogers to do something he says his religious beliefs told him not to do.[3] *See* EEOC Compliance Manual § 12-I(A)(1) (Jan. 15, 2021) ("[O]verlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system."). For example, one might also have health or ethical concerns about eating certain types of meat, but that does not mean that keeping kosher or halal is not a bonafide religious belief. *Love v. Reed,* 216 F.3d 682, 688 (8th Cir. 2000) ("We would not deny that a Jew's desire to keep Kosher is rooted in religion even if he were not a Rabbinical scholar capable of explaining the more subtle spiritual aspects of Judaism.").

That Mr. Rogers's religious approach to the vaccine is somewhat idiosyncratic, even among others who share his Christian faith, does not permit courts (or employers) to treat it as less worthy of respect and protection. *See Does 1–11 v. Regents of the Univ. of Colorado*, 100 F.4th 1251, 1274 (10th Cir. 2024) (rejecting policy that allowed exemption "for some favored religious applicants" over others who did not adhere to "official doctrine"). It is precisely the religious minority that the First Amendment is there to protect. *See, e.g., Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 505 (1952) (finding law banning "sacrilegious" films

---

[3]   Newmont does not dispute that Mr. Rogers' beliefs are sincerely held.

- 7 -

unconstitutional under the First Amendment in part because a censor "would be subject to an inevitable tendency to ban the expression of unpopular sentiments sacred to a religious minority.").[4]

Mr. Rogers's allegations at the very least plausibly plead that his objection is religiously motivated. That is sufficient to deny the motion as to the failure-to-accommodate claim at this stage. *See, e.g., Caspersen v. Western Union, LLC*, No. 23-cv-00923-NYW-SBP, 2023 WL 6602123, at *9 (D. Colo. Oct. 10, 2023); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 902 (8th Cir. 2024).[5]

## II. Rogers Failed to Exhaust Administrative Remedies for his Disparate Treatment Claim

Rogers also brings a claim for disparate treatment related to his termination by Newmont, alleging that he was discriminated against on the basis of his religion. "A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC

---

[4] Newmont's approach also invites, if not requires, the sort of "trolling through a person's . . . religious beliefs" and "governmental monitoring or second-guessing" of "religious beliefs and practices" that the Tenth Circuit recently reiterated is forbidden by the First Amendment. *See Does 1–11*, 100 F.4th at 1271, quoting *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1261 (10th Cir. 2008).

[5] *Ringhofer* is the most on-point precedent I have identified at the circuit level. There, two plaintiffs objected to regular COVID testing for nearly the exact same reasons as Rogers objected to the vaccine requirement in this case. One plaintiff stated "her body is a temple for the Holy Spirit that she is duty bound to honor" and that she "does not believe in putting unnecessary vaccines or medications into her body." *Ringhofer*, 102 F.4th at 902. The other stated that "[m]y faith is in my Creator who is my Healer. . . Shifting my faith from my Creator to medicine is the equivalent of committing idolatry." *Id.* The Eight Circuit held that these plaintiffs had "plausibly pled that their religious beliefs conflict with the testing requirement," reasoning that "[b]y connecting their objection to specific religious principles. . . they have satisfied their burden at this stage." *Id*.

charge for which the plaintiff received a right-to-sue letter." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1101, 1194 (10th Cir. 2004) (quotation marks omitted). This "exhaustion rule derives from two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quotation marks omitted). "While we must liberally construe the plaintiff's allegations in the EEOC charge, the <u>charge</u> must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.* (quotation marks omitted) (emphasis in original). "The ultimate question is whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." *Villarreal v. Walmart*, No. 19-cv-01722, 2021 WL 1022701 at *6 (D. Colo. Mar. 17, 2021) (quoting *Smith*, 904 F.3d at 1164).

While Mr. Rogers' EEOC charge clearly gives notice of his failure to accommodate claim, it does not give notice of his disparate treatment claim, nor does this claim reasonably grow out of the allegations that Mr. Rogers actually made in his EEOC charge. *See* Doc. 9–2 at 2. This conclusion stems in part from the inherent difference between a failure-to-accommodate claim and a disparate treatment claim. On the one hand, disparate treatment claims "allege that the employer discriminated against the employee by *acting* in a discriminatory manner." *Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784, 796 (10th Cir. 2020) (emphasis in original) (addressing this distinction in the context of ADA claims). "On the other hand, failure-to-accommodate claims do not allege that the employer *acted*, but rather that the employer *failed to act*." *Id.* (emphasis in original).

The crux of Mr. Rogers' EEOC charge is that Newmont failed to act

- 9 -

by refusing to provide him with a religious exemption to its COVID vaccine mandate. Mr. Rogers mentions that he "submitted requests for religious exemption," that "I requested to be allowed to continue working from home as I had since the 2020 outbreak," and that "I believe I was denied reasonable accommodation for my religious beliefs." Doc. 9–2 at 2. But he does not allege that Newmont actively treated him disparately beyond its failure to accommodate his requests for religious exemption. As Newmont notes, there is nothing in the charge that would put the EEOC on notice that "he was treated differently than other employees because he is a Christian, rather than because he refused to be vaccinated." Doc. 31 at 7.

Mr. Rogers' conclusory statement that "I have been discriminated against based on my religion (Christian)" is insufficient to put a charge as to disparate treatment before the EEOC because it does not adequately specify the nature of the alleged discrimination. *Id*; *see Allen v. Austal*, No. 22-cv-00328, 2023 WL 4440661 at *9 (S.D. Ala. Jul. 10, 2023) (finding similar statement insufficient to give notice of "religious-based discrimination under a theory separate and apart from [the] claim that defendant failed to reasonably accommodate [plaintiff's] religious beliefs and terminated [plaintiff] as a result."); *Jackson v. Unified Gov't of Wyandotte Cnty., Kansas*, No. 2:21-cv-02387, 2023 WL 365729 at *6 (D. Kan. May 25, 2023) (finding plaintiff's statement that "her race, gender, and disability are the reason for the discriminatory treatment" insufficient to exhaust a disparate treatment claim without more factual detail). Accordingly, Mr. Rogers' disparate treatment claim was not properly exhausted and must be dismissed.

## CONCLUSION

It is ORDERED that:

The Defendant's Motion to Dismiss, Doc. 9 is GRANTED IN PART AND DENIED IN PART. The Motion is DENIED as to Mr. Rogers' reasonable accommodation claim and GRANTED as to his disparate treatment claim.

DATED: June 27, 2024            BY THE COURT:

Daniel D. Domenico
United States District Judge

- 11 -